UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JESSE HARDY SWINSON, III,

    Petitioner,

  v.                                        Case Nos.    14-C-484
                                                                   14-C-774
TIM HAINES, Warden                                             14-C-1297

    Respondent.

---

## DECISION AND ORDER

---

    Petitioner Jesse H. Swinson is presently serving a sentence in the Wisconsin prison system for three counts of theft by fraud, contrary to Wis. Stat. § 943.20(1)(d), and one count of bailjumping in violation of Wis. Stat. § 946.49(1)(b). He has filed a series of petitions for habeas corpus pursuant to 28 U.S.C. § 2254 challenging the decision denying him release on parole in 2010. Swinson claims that prison administrators and state courts have interpreted and applied state laws governing its earned release program in violation of the due process, equal protection, and ex post facto clauses of the United States Constitution. For the reasons below, the petition will be denied.

### BACKGROUND

    Swinson's case is unusual by any standard. The criminal conduct that led to the state convictions for which he is currently serving state sentences was discovered more than thirty-five years ago. From December of 1987 until September of 1989, Swinson used his position as the project manager for a multi-million dollar mill building project for the Kohler Company to defraud Kohler of $250,000. Essentially, Swinson set up a dummy corporation that billed Kohler for goods

and services that were never performed or were performed by other contractors, and then approved the dummy invoices for payment. An internal audit uncovered the fraud in 1989.

In 1991, a federal grand jury indicted Swinson on seventeen counts of mail fraud in violation of 18 U.S.C. § 1341 and the case proceeded to trial in 1993. At the close of the evidence, the trial court dismissed all but one count because the government had failed to establish that the checks had been mailed, an essential element for the mail fraud charges. The jury convicted Swinson on the remaining count, and he was sentenced to thirty months in prison. On appeal, however, the United States Court of Appeals for the Seventh Circuit held that the evidence was insufficient to establish that the mail had been used even for the count that went to the jury. The Court reversed the conviction and remanded the case to the district court with instructions to enter a judgment of acquittal. *United States v. Swinson*, 993 F.2d 1299 (7th Cir. 1993).

The State of Wisconsin then instituted a state prosecution of Swinson in the Circuit Court for Sheboygan County based on the same course of conduct. On June 9, 1994, Swinson was charged in an information with fifteen counts of theft by fraud. Following another trial, a jury returned a verdict of guilty on all fifteen counts, and sentencing was set for May 3, 1995. Swinson failed to appear for sentencing, however, and the State issued a new complaint charging him with bailjumping and obtained a warrant for his arrest. Four years later, Swinson was returned to court for sentencing on the theft by fraud counts on which he had gone to trial and the bailjumping charge on which he had entered a plea of guilty. The court sentenced him to a combined total of twenty-nine years in prison, eight years each on three of the theft charges, and five years on the bailjumping, with all sentences to be served consecutively. On the remaining twelve counts of theft, the court withheld sentence and placed Swinson on probation for a term of ten years consecutive to his prison

2

term. After exhausting his state court remedies, Swinson filed a petition for federal habeas corpus with this court in 2003, which was denied.

The petitions currently before the court do not challenge the constitutionality of Swinson's underlying conviction and sentence. It is far too late for that. Instead, Swinson is challenging the denial of his release on parole under the state's early release program. More specifically, Swinson's claims in this case all involve the interpretation and implementation of Section 302.05 of the Wisconsin Statutes, which created a substance abuse and rehabilitation program administered by the Wisconsin Department of Corrections (DOC). The law now includes an Earned Release Program ("ERP") for eligible inmates who complete a substance abuse treatment program. Swinson claims he has been unconstitutionally denied the benefit of this program, though he has never explained what substances (if any) he was abusing or demonstrated that he ever had a substance abuse problem that needed treatment.

The Parole Commission denied Swinson discretionary Parole in 2010, finding that he had not been sufficiently rehabilitated and that he remained a risk to the public. In particular, the Commission considered his history of fraud and the severity of his offenses. The Parole Commission Chair subsequently approved the Commission's decision. The Program Review Committee (PRC) later unanimously rejected Swinson's request to reduce his security classification from medium to minimum. The Bureau of Offender Classification and Movement (BOCM) rejected Swinson's appeal of his attempted reclassification in early 2011. Swinson next filed a petition for writ of certiorari in Dane County Circuit Court, which denied his petition to review the BOCM decision.

Swinson subsequently appealed to the Wisconsin Court of Appeals, again challenging the denial of his request to change his prison custody classification. The court summarily affirmed the

3

Circuit Court's order. The court began by noting that many of Swinson's arguments were "incoherent, undeveloped, or unsupported by relevant factual and legal citations" as required by the Wisconsin rules of appellate procedure. *State ex rel. Swinson v. Snider*, No. 2011AP2856, *2 (Wis. Ct. App. Feb. 21, 2013), ECF No. 7-3; see WIS. STAT. RULE 809.19(1)(d) and (e). With that understanding, the court reviewed only Swinson's arguments that were not so "patently meritless or so inadequately developed that they do not warrant our attention." *State ex rel. Swinson*, No. 2011AP2856, at *2. The court rejected the merits of Swinson's challenge to the denial of his request for reclassification because the PRC's decision was based on appropriate factors and was thus not arbitrary and capricious.

The parties to this case dispute what documents were filed and what arguments were made before the Wisconsin Supreme Court. Respondent insists that Swinson only filed a pleading dated June 23, 2013, which the Wisconsin Supreme Court treated as a non-conforming petition for review. That document has the title "Notice of and Motion to Amend the Now Standing Petition for Original Action Habeas Corpus Tendered to Chief Justice Shirley Abrahamson on May 01, 2013. . . ." (ECF No. 12-7.) That pleading did not contain claims alleging violations of the ex post facto, due process, or equal protection clauses based on any interpretation and implementation of Wis. Stat. § 302.05.

Swinson, in contrast, repeatedly asserts that he made his constitutional arguments before the Wisconsin Supreme Court. Though he fails to directly cite to the alleged pleading, Swinson has filed many other "exhibits" with this Court that appear to have been filed with the Wisconsin Supreme Court. Though Swinson's obscure prose is difficult to comprehend, some of these documents discuss the same ex post facto, due process, and equal protection claims that he raises in the present case. (ECF No. 28-2.) Filed in late November 2013, one pleading which raises these arguments is

4

Case 1:14-cv-00484-WCG   Filed 12/31/15   Page 4 of 15   Document 39

titled: "Notice and Motion in Support of Petition for an Original Habeas Corpus Pursuant WSA, §.***782. Et Seq;... RE: The Illegal and Unconstitutional Interpretation and Implementation of the Earned Release Program (ERP) by WDOC Sub-Agency Employees; . . . ." This document was at least allegedly filed prior to the March 17, 2014 Wisconsin Supreme Court's order denying Swinson's request for a writ of habeas corpus and all other requests for relief. After the Wisconsin Supreme Court declined review of Swinson's case, he timely filed the present petition for relief in this Court.

Swinson has filed three separate habeas petitions in the Eastern District of Wisconsin. The Court has allowed Swinson to proceed on his claim that the Respondent's failure to release him under the state's Earned Release Program ("ERP") violates the ex post facto clause of the Constitution and denied him equal protection and due process. Each petition was allowed to proceed on the mistaken belief that each challenged a different decision denying Swinson his parole. This Court consolidated Case Nos. 14-C-484 and 14-C-1297. Later, District Judge Adelman issued an order consolidating Case No. 14-C-774 with the instant case. It now appears, however, that each petition challenges the denial by the Parole Board in 2010 of his early release under Wis. Stat. § 302.05. Since all three petitions challenge the same decision, the latter two will be dismissed as second or subsequent petitions. See 28 U.S.C. § 2244(b). Any additional arguments presented in the dismissed petitions will nevertheless be considered.

## ANALYSIS

### A. Procedural Default

**1. Exhaustion Requirement**

Federal review of state criminal convictions is limited to claims that the petitioner's custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). In order to obtain federal review of his federal claims, a state prisoner must first exhaust his state court remedies and provide the state courts a full and fair opportunity to correct any error. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "That means, among other things, articulating the point in such a way that a judge could grasp both its substance and its foundation in federal law." *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). The fair and full presentation requirement has not been met if the reviewing court must "go outside the four corners of the document in order to understand the contention's nature and basis." *Id.* (citing *Baldwin v. Reese*, 541 U.S. 27 (2004)). "A mere passing reference to a constitutional issue certainly does not suffice." *Sturgeon v. Chandler*, 552 F.3d 604, 610 (7th Cir. 2009); *see Griffin v. Brown*, 84 F. App'x 659, 660 (7th Cir. 2003) ("Although we liberally construe filings by pro se litigants, we must still be able to ascertain the arguments a litigant raises.") (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir.2001)).

**2. Petitioner's Claims Before the State Courts**

Swinson's pleadings, briefs, and motions before the Wisconsin state courts (and this Court) amount to a stew of decontextualized legal theories, irrelevant factual details, jumbled reasoning, and abstruse word choices. They are difficult to read and nearly impossible to understand. Throughout his various briefs Swinson raises issues of complex administrative and constitutional law, at times

6

challenging foundational aspects of modern American law. But he never fully develops an issue, diving in and out of legal arguments in a haphazard manner. The state courts, unable or (understandably) unwilling to engage with Swinson at this level, simply did not address many of his claims in their orders. Indeed, Wisconsin state courts never addressed any of the claims that he now brings before this Court. The exhaustion standard, however, does not depend on whether the state courts engaged with Petitioner's arguments. The standard hinges on whether Swinson provided the state courts a full and fair opportunity to engage his arguments. Respondent has two primary arguments that Swinson failed to do so.

First, Respondent urges that Swinson has failed in his responsibility of presenting his current constitutional claims at each level of his state court actions. Respondent notes that the circuit court made a great effort to construe Swinson's pleadings and determined Swinson presented five arguments. The court interpreted Swinson's briefs to be arguing that: (1) the PRC's (non-ERP) decision was an unconstitutional ex post facto determination; (2) the PRC improperly considered his child support obligations; (3) the PRC improperly considered separate charges; (4) Swinson suffered race and age discrimination; and (5) the decision to deny Swinson access to the ERP was against the substantial evidence. None of those arguments are now before this Court. It is not clear to this Court what other arguments, if any, Swinson raised before the circuit court.

Respondent next notes that any statement on whether Swinson raised due process, ex post facto, and equal protection arguments before the state court of appeals would just be a guess. The Wisconsin Court of Appeals found that his appellate arguments were "incoherent, undeveloped, or unsupported by relevant factual and legal citations." (ECF No. 12-6.) The only argument the appeals court specifically ruled on was Swinson's contention that he should have been reclassified

7

from medium to minimum security. The court held that any arguments not addressed "are either so patently meritless or so inadequately developed that they do not warrant our attention." According to Respondent, Swinson's failings at the court of appeals amounts to procedural default.

Respondent also contends that Swinson did not fairly present his federal constitutional challenges to the Wisconsin Supreme Court. As discussed above, Respondent alleges that Swinson's filing before the supreme court (ECF No. 12-7) never discussed his current constitutional arguments. Respondent is correct that the document he cites (ECF No. 12-7) does not discuss Swinson's current constitutional claims, but that is not the only document Swinson filed with Wisconsin Supreme Court. For example, Swinson also filed exhibits with this Court that touch upon his constitutional claims and appear to have been filed with the Wisconsin Supreme Court. (ECF No. 28-2.) The difficulty is that it appears that Swinson never filed a document he designated a petition for review with the Wisconsin Supreme Court. Regardless of how Swinson's filings are denominated, however, his filings before the Wisconsin Supreme Court are largely incomprehensible.

Second, Respondent argues that Swinson's claims before the three state courts are distinct from the ones he now makes before this Court. According to Respondent, Swinson never argued in state court that the interpretation and application of § 302.05 violated the ex post facto, due process, or equal protection clauses. Instead, he argued before the state circuit court that he was the victim of race and age discrimination and that the parole committee improperly considered unpaid child support in their determination. His argument likewise focused on the Parole Commission's decision to deny him discretionary parole as an ex post facto law, rather than the interpretation and application of § 302.05 which he now claims operated as an ex post facto law.

8

Swinson named a party not responsible for § 302.05 determinations in his challenge before the circuit court, preventing the circuit court from reaching the merits of his substantial evidence claim.

Both of Respondent's arguments are correct. Whether Swinson's arguments in state court actually included his entitlement to ERP is not clear from the record because his present petition, which purports to reproduce his state court filings, is filled with rambling arguments strewn with countless mostly irrelevant citations. In any event, I am satisfied that Wisconsin courts have not had the sort of "fair opportunity" to review his federal arguments that is required before federal review is permissible. *See Kurzawa*, 146 F.3d at 441. The Seventh Circuit has adopted the following analysis:

> If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. However, the presence of any one of these factors, particularly factors (1) and (2), does not automatically avoid a waiver; the court must consider the specific facts of each case.

*Id.* Here, Swinson failed number (4)—to assert in the state proceedings a claim in terms "so particular as to call to mind a specific constitutional right[.]" To the extent that he has tried to assert particular federal rights here in federal court, the record shows he did not adequately do so in state court.

"[T]he bottom line is that the 'task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis.'" *Id.* at 442 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992)). In fact, the Wisconsin

Court of Appeals stated the following with respect to Swinson's state petition: "Any arguments in [Swinson's] briefs that we do not address are either so patently meritless or so inadequately developed that they do not warrant our attention." *State ex rel. Swinson*, No. 2011AP2856, at *2. The court went on to dispose of, in summary fashion, Swinson's petition on the basis of purely state law questions. *See id.* at 3–4. In these circumstances, I conclude that the state court did not have a fair opportunity to address any federal claims Swinson raised.

**3. Cause and Prejudice**

A habeas petitioner may be excused from procedurally defaulting if he can prove that he had cause for not raising his current arguments in state court. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *Nutall v. Greer*, 764 F.2d 462, 465 (7th Cir. 1985). "[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Simply having pro se status does not amount to cause to excuse procedural default. *Salberg v. United States*, 969 F.2d 379, 383 (7th Cir. 1992); *Barksdale v. Lane*, 957 F.2d 379, 385–86 (7th Cir.), *cert. denied*, 506 U.S. 890 (1992). *See McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995); *George v. Perrill*, 62 F.3d 333, 335 (10th Cir. 1995). Even if cause is shown, a petitioner must also show prejudice to excuse the default. To show prejudice a petitioner must show that the claimed constitutional violations "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Perruquet v. Briley*, 390 F.3d at 515 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Swinson has not established that anything prevented him from presenting his federal constitutional challenges to the state courts. No "external impediment" existed, and he does not

10

appear to argue that there was any. Swinson is additionally unable to show that there has been a "fundamental miscarriage of justice" where a "constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494–95 (1991). Swinson does not claim to be innocent, only that he was entitled to a participate in a program that could have lead to his early release from the lawful sentence that was imposed for his crimes.

For all these reasons, I conclude that Petitioner failed to fairly and fully present his current constitutional claims at any level of state court. 28 U.S.C. § 2254(b)(1). Therefore, Petitioner's request for habeas relief must be denied.

### B. Constitutional Claims

Even if Swinson had not procedurally defaulted on his claims, his constitutional claims fail on their merits. As noted above, Swinson bears the burden of proving that his custody is in violation of the Constitution. 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997).

Swinson's constitutional claims all relate to Wisconsin's Earned Release Program (ERP) authorized by Section 302.05 of the Wisconsin Statutes, a program that did not even exist at the time Swinson was sentenced. The ERP has changed significantly since its commencement in 2003. *See, generally,* Brennan, Michael B., THE PENDULUM SWINGS: NO MORE EARLY RELEASE, 84 Wis. Lawyer 4 (Sept. 2011). Initially, the ERP offered early release for non-violent offenders who successfully completed a substance abuse treatment program. *Lynch v. Hepp*, 626 F.Supp.2d 887, 888 (W.D. Wis. 2009). In 2009, the ERP was expanded to allow early release for successful completion of "rehabilitation programs." Wis. § 302.05(1) (2010). Indeed, the amended statute stated that if the Department of Corrections determined that an eligible inmate has successfully completed a rehabilitation program described in sub. (1), "the earned release review commission shall

11

parole the inmate for that sentence under § 304.06 regardless of the time the inmate has served." Wis. § 302.05(3)(b) (2010). Effective August 3, 2011, the expansion of the ERP to include rehabilitation programs in general has been repealed. Wis. Stat. § 302.05(am).

Given these facts, Swinson's ex post facto claim clearly fails. "The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28–29 (1981) (quoting *Cummings v. Missouri*, 4 Wall. 277, 325–326, 18 L.Ed. 356 (1867)). Because the ERP did not exist at the time Swinson committed his crimes, failing to apply it to him cannot be considered retroactive punishment. The sentence he received for his crimes has not been increased retroactively. Indeed, Swinson's entire argument is that his sentence should be decreased because of subsequent changes in the law from which he seeks to benefit. Whatever else it may be, a state's failure to release an inmate earlier than his lawfully imposed sentence requires is not a violation of the Ex Post Facto Clause.

Petitioner's due process claim likewise fails because Swinson has failed to establish he had any liberty interest in release under the ERP. Generally, inmates in Swinson's position have no liberty interest in parole until they reach their mandatory release date after serving two-thirds of their sentences. *Felce v. Fiedler*, 974 F.2d 1484, 1491–92 (7th Cir. 1992) (citing Wis. Stat. § 302.11(1)). Any release before then under the ERP would have been conditioned on Swinson accomplishing a substance abuse or rehabilitation program "for purposes of the earned release program." Wis. Stat. 302.05(1) (2009-10). Like good-time credits under separate state programs, a liberty interest under § 302.05 only arises, if at all, once the program—whether rehabilitative or dealing with substance abuse—has been completed and release is mandated under the statute. *Montgomery v. Anderson*,

12

262 F.3d 641, 644–45 (7th Cir. 2001) ("Good-time credits are statutory liberty interests once they have been awarded, just as parole is a form of statutory liberty once the prisoner has been released."). Swinson has failed to complete any program for which early release is mandated.

Finally, Swinson's equal protection argument also fails under his "class of one" theory because he has not shown that he was "irrationally singled out . . . for discriminatory treatment." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008). Swinson claims he was treated differently than those with substance abuse problems who were released under the ERP, but treating those with substance abuse problems differently would have been completely rational and therefore not a violation of the equal protection clause. Thus, though Swinson failed to properly exhaust his state court remedies, even if he had, the result would be the same. He is not entitled to federal release on any of the claims asserted.

## CONCLUSION

Accordingly, and for the reasons set forth above, I conclude that no hearing is necessary, and I further conclude that Swinson is not entitled to relief under section 2254.

**IT IS ORDERED** that Swinson's petitions for relief under 28 U.S.C. § 2254 are **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Proceedings For the United States District Courts, the court **GRANTS** a certificate of appealability. A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented

13

were adequate to deserve encouragement to proceed further." *Slack v McDaniel*, 529 U.S. 473, 484 (internal quotation marks omitted) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Here, though I have found that Swinson failed to properly exhaust his state court remedies and rejected his claims on the merits, I do not conclude that he has failed to make a substantial showing of a violation of his rights under the due process and equal protection clauses of the United States Constitution. The fact that, though eligible for parole, Swinson remains in custody after serving more than fifteen years in prison for a white collar crime that, with the exception of the bail jumping conviction, resulted in a total federal sentence of thirty months more than thirty years ago could cause reasonable jurists to debate whether the petition should have been resolved differently.

**NOTICE:** This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A). Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 60(b)(2).

14

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated this   31st   day of December, 2015.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court